FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 25, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SAMUEL F.,<br><br>                    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security Administration,<br><br>                    Defendant. | NO:  4:24-CV-5055-TOR<br><br>ORDER OF REMAND |

BEFORE THE COURT are the Plaintiffs Opening Brief (ECF No. 9) and Commissioner's Brief (ECF Nos. 13).  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the Court **VACATES** and **REMANDS** the Commissioner's decision for further administrative proceedings.

//

//

ORDER OF REMAND ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*, at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If

the analysis proceeds to step five, the burden shifts to the Commissioner to

establish that (1) the claimant is capable of performing other work; and (2) such

work "exists in significant numbers in the national economy."  20 C.F.R.

§ 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income (SSI) benefits on March

15, 2022, alleging an onset date of February 15, 2017.  ECF No. 6 at 21.  Plaintiff

appeared for a hearing before an administrative law judge ("ALJ") on October 25,

2023.  *Id.*  The ALJ issued a decision on November 17, 2023, finding that Plaintiff

was not disabled under the Social Security Act.  ECF No. 6.

At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since March 15, 2022, the alleged onset date.  *Id.* at 23.  At step

two, the ALJ found that Plaintiff had medically determinable impairments

consisting of depression, anxiety, post-traumatic stress disorder ("PTSD"), ulnar

neuropathy, sleep apnea, and asthma, that significantly limited Plaintiff's ability to

perform basic work activities.  *Id.*  The ALJ also found Plaintiff had nonsevere

gastrointestinal reflux disease.  At step three, the ALJ found Plaintiff's

impairments or combination of impairments did not meet or medically equal the

severity of one of the listed impairments of 20 C.F.R. 404, Subpart, P, Appendix 1.

*Id.* at 23.  The ALJ then found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with certain exceptions:

> he can perform frequent, but not repetitive handling and fingering. He must avoid a concentrated exposure to pulmonary irritants such as dust and fumes. He must avoid unprotected height and dangerous moving machinery. He can perform simple, routine, and repetitive tasks. He can have no interaction with the general public. He can have only occasional interactions with supervisors and coworkers. He can have no work requiring a specific production rate or hourly quotas, but can work in proximity to, but not on joint or shared tasks. He can respond to only occasional changes in the work setting.

ECF No. 6 at 25.

At step four, the ALJ found that Plaintiff has no past relevant work.  *Id.* at 27.  At step five, the ALJ found that after considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a housekeeper/cleaner, inspector, and packager.  *Id.* 28-29.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from March 15, 2022, to the date of the ALJ's decision.  *Id.* at 29.

On April 8, 2024, the Appeals Council denied review (ECF No. 6 at 5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

his supplemental security income under Title XVI of the Social Security Act.

Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ improperly discredited Plaintiff's testimony;

2. Whether the ALJ failed to properly consider and weigh the medical

   opinion evidence; and

3. Whether the ALJ failed to properly consider Plaintiff's obesity.

ECF No. 9 at 2.

## DISCUSSION

### A. Plaintiff's testimony

Plaintiff contends the ALJ erred by failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims. ECF No. 9 at 5. Plaintiff also contends the ALJ erred in failing to properly assess Plaintiff's testimony regarding his limitations. ECF No. 9 at 9-12.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably

be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ found that while Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, Plaintiff's subjective testimony on the intensity, persistence and limiting effects of the symptoms were inconsistent with medical evidence and other evidence in the record. ECF No. 6 at 7. After noting several specific inconsistencies from the record, the ALJ gave four justifications in discounting the extent of Plaintiff's claimed symptoms. First, the ALJ stated:

> As an initial matter, the claimant had a limited work history prior to his onset date (Exhibit 5D). This shows that factors other than severe impairments may have prevented the claimant from working. One of those factors may have been the claimant's incarceration history testified to during the hearing (hearing testimony).

ECF No. 6 at 27.

ORDER OF REMAND ~ 10

1    Plaintiff argues the ALJ's justification in discounting Plaintiff's testimony is

2    unsustainable because it does not take into consideration that Plaintiff was found

3    disabled under the SSA at the age of 24, with an onset at 20, all the way up until

4    2020 when Plaintiff was incarcerated.  ECF No. 9 at 5.  Defendant argues the ALJ

5    reasonably considered Plaintiff's sporadic work history when he was neither

6    disabled nor incarcerated in concluding it suggested something other than a severe

7    impairment prevented Plaintiff from working.  ECFR No. 13 at 6-7.

8    An ALJ may use evidence of poor work history in assessing a claimant's

9    credibility.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Here, the ALJ

10    referenced a limited work history prior to Plaintiff's onset date and stated

11    Plaintiff's prior incarceration as a factor, but failed to mention the prior sixteen

12    years where Plaintiff was disabled as an additional factor.  ECF No. 6 at 27.  As

13    such, the ALJ relying solely on Plaintiff's poor work history as the primary basis to

14    discredit Plaintiff's testimony would have been extremely questionable under the

15    substantial evidence review.  However, such error is harmless, and not a basis for

16    remand, where "it is inconsequential to the [ALJ's] ultimate nondisability

17    determination."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Here, the

18    ALJ identified other primary reasons in discrediting Plaintiff's testimony.  First,

19    the ALJ noted Plaintiff's symptoms from his testimony.

20         The claimant testified that he is disabled from depression, anxiety,
     PTSD, ulnar neuropathy, asthma, and sleep apnea (hearing testimony).

> The claimant testified to anger and difficult dealing with people (hearing testimony). The claimant testified to memory deficits, easy anger, and exploding often (hearing testimony).

ECF No. 6 at 26.

In discrediting Plaintiff's mental status testimony, the ALJ stated, "mental status examinations in the record were unremarkable, even when the claimant could not afford medication (Exhibit 12F/1-19)." *Id.* at 27. Plaintiff first argues that the ALJ cannot reject the testimony solely because it could not be supported by objective evidence. ECF No. 9 at 6. However, the ALJ did not discredit Plaintiff's testimony on the basis it was not supported by objective evidence but, rather, stated that the testimony was "not entirely consistent with the medical evidence and other evidence in the record" because the mental status examinations in the record were unremarkable. ECF No. 6 at 27. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). The ALJ cited to mental status evaluations in the record that frequently revealed a normal mood and affect, intact associations, linear thoughts, and cooperative behavior which the ALJ reasonably found to be somewhat inconsistent with Plaintiff's testimony. ECF No. 6 at 26.

Plaintiff next argues that the ALJ's statement that Plaintiff had unremarkable mental status "even when the claimant could not afford medication" is

unsustainable because the record shows Plaintiff was consistently taking

medication.  ECF No. 9 at 6-7.  Plaintiff appears to interpret the ALJ's statement as

a finding Plaintiff's mental status was "unremarkable" exclusively while not on

medication.  However, the Court interprets the ALJ's statement to mean Plaintiff's

mental examinations were unremarkable while being treated with medication

*including* when he couldn't afford the medication.  Indeed, the ALJ had previously

stated, "the record shows stable psychological functioning and mental status

examinations with treatment. . . . In January 2023, the claimant reported doing well

until he could not afford medication (Exhibit 12F/17).  Nonetheless, the claimant

had a good mood, and no significant mental status abnormalities (Exhibit 12F/19)."

ECF No. 6 at 26.  The cited medical record page, 12F/17, noted on a particular

visit Plaintiff reported doing well on medication but was struggling after recently

finding out he had to vacate his residency with nowhere else to go.  *Id.* at 573.

Plaintiff did not explicitly say he could not afford his medication as the ALJ stated,

and it appears he was continuing his medication at that time.  *Id.*  However, the

Court disagrees with Plaintiff's attenuated contention that the ALJ was exclusively

referring to Plaintiff's mental status "unremarkable" when he was off medication.

The ALJ repeatedly discussed Plaintiff's mental status and his treatment with

references to the record that discussed Plaintiff's medications.  ECF No. 6 at 26-

27.

ORDER OF REMAND ~ 13

1    Plaintiff also argues the ALJ failed to properly consider other evidence in

2    the record that supported Plaintiff's symptom testimony, such as reports of

3    Plaintiff presenting as anxious, angry/irritable, worried, needing help to

4    concentrate, with a flat or restricted affect, and grooming/hygiene impairments.

5    ECF No. 9 at 6-7.  While the evidence could present a viable interpretation that

6    Plaintiff was experiencing the symptoms expressed in his testimony, it is not the

7    Court's role to second guess the ALJ's finding if it is nonetheless supported by

8    substantial evidence in the record.  *Thomas*, 278 F.3d at 959; *Smartt*, 53 F.4th at

9    494 ("Where the interpretation of the evidence is susceptible to more than one

10   rational interpretation, the ALJ's decision must be affirmed.").

11   For the third third justification in discrediting Plaintiff's testimony, the ALJ

12   stated that "recent physical testing was normal after the claimant's release surgery

13   (Exhibit 11F/10-16).  Additionally, the record does not show frequent asthma

14   exacerbations (*See* Exhibit 1F-13F)."  Plaintiff argues the ALJ failed to explain

15   what testimony was being discredited with those findings and how it contradicted

16   allegations related to Plaintiff's mental impairments.  ECF No. 9 at 7-8.  However,

17   the ALJ pointed to Plaintiff's testimony that he suffered from ulna neuropathy and

18   asthma before citing the record in detail of treatments and diagnoses related to

19   those impairments.  ECF No. 6 at 26.  As to Plaintiff's second point, identifying

20   inconsistencies in testimony goes to the general credibility of the claimant.  *See*

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.").  Thus, inconsistencies on issues not pertinent to the underlying claimed cause of a disability may still detract from a claimant's overall credibility.

Finally, the ALJ concluded Plaintiff's impairments were not disabling due to the fact "the claimant is still able to perform activities of daily living, as the claimant reported cooking short meals, cleaning up, doing laundry, driving, shopping, paying bill, and watching television (Exhibit 4E)."  Plaintiff correctly notes that a claimant's daily activities may not detract from the claimant's credibility as to the disability unless it is used to contradict the claimant's testimony, or the activities qualify as transferable work skills.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  Plaintiff argues the ALJ failed to show either criterion was met.  The Court agrees the ALJ failed to provide clear and convincing evidence as to how Plaintiff's daily activities contradict Plaintiff's testimony or meet the threshold as transferable work skills.  Defendant's argument that the ALJ identified the daily activities as contrary to Plaintiff's reported cognitive and social limitations is not adequately reflected in the ALJ's decision.

Plaintiff makes an additional argument that the ALJ failed to consider other significant limitations listed in the functions report in her decision.  ECF No. 9 at 9.  It is not the Court's duty to reweigh the evidence or substitute its judgment for that of the ALJ, but review whether the ALJ's findings were supported by substantial evidence.  The Court finds that even without considering Plaintiff's daily activities as detracting from his credibility, the above statements qualify as specific, clear and convincing reasons for rejecting Plaintiff's asserted limitations. Thus, the ALJ did not err in rejecting Plaintiff's testimony.

**B. Opinions of treating physicians**

Plaintiff argues the ALJ improperly disregarded, considered, or ignored certain medical opinions, specifically Dr. Morgan, Ph.D., Dr. Harmon, Ph.D., A. Suansilppongse, M.D., and J. Gilbert, Ph.D.

Under the new Social Security regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)."  Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867–68.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that

tend to support or contradict a medical opinion or prior administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Those factors are defined as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the

ALJ is required to explain how "the most persuasive factors" were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

These regulations displace the Ninth Circuit's standard that require an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). As a result, the ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence." *Id.*

  i.   Dr. Morgan

In referencing Dr. Morgan's evaluation, the ALJ stated:

> Dr. Morgan Ph.D. found multiple marked psychological limitations (Exhibit 2F/3, 8). This opinion is not persuasive, as it is not supported by references to the record or evidence that would support this level of marked limitations (Exhibit 2F). This opinion is further inconsistent with record that showed the claimant was doing ok on medication (Exhibit 6F/8). This opinion is inconsistent with mental status examinations in the record that were unremarkable, even when the claimant could not afford medication (Exhibit 12F/1-19).

ECF No. 6 at 28. Plaintiff contends the ALJ found Dr. Morgan's opinion to be unsupported without proper explanation on the basis for such conclusion. ECF No. 9 at 13. "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (quoting *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022)).

Substantial evidence supports the ALJ's finding that Dr. Morgan's opinion regarding Plaintiff's mental impairments was not persuasive.  The ALJ correctly observed that Dr. Morgan's report made no reference to any outside record or evidence in support of the concluded limitations.  ECF No. 6 at 281-285.  The report had little foundation beyond Plaintiff's subjective reports during an examination of limited contact with Dr. Morgan.  *Id*. at 281-282, 287.  Further, as the ALJ stated, the report was inconsistent with the record indicating Plaintiff was responding well to medication.  *Id.* at 281.  Dr. Morgan reported Plaintiff was "not currently engaged in formal mental health treatment and [was] not taking prescription psychiatric medication." *Id.*  No other evaluation was conducted by Dr. Morgan after Plaintiff began treatment and medication; thus, the opinion was inconsistent with the record indicating Plaintiff was doing better on medication.  Finally, the ALJ adequately supported the statement the mental status examinations in the opinion were inconsistent with those of the record.  Plaintiff's evaluations in the record were regularly mild and unremarkable.  ECF No. 6 at 557-594.

ii.  Dr. Harmon

Plaintiff next argues the ALJ erred in failing to consider Dr. Harmon's opinion.  Specifically, Plaintiff contends Dr. Harmon's evaluation compels disability thereby requiring the ALJ to have explicitly addressed why it was rejected.  ECF No. 9 at 17.  Plaintiff argues Dr. Harmon's report was probative of

Plaintiff's disability because it confirmed Dr. Morgan's assessment of limitations, agreed with his diagnoses, and reported Dr. Morgan's severity ratings seemed realistic. *Id.* Defendant argues Dr. Harmon's report did not qualify as a medical opinion as a matter of law, and therefore, the ALJ was not required to evaluate its persuasiveness. ECF No. 13 at 14.

Under 20 C.F.R. § 416.913(a)(2), a medical opinion is defined as a "statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in abilities to perform mental and physical demands of work. 20 C.F.R. § 416.913(a)(2). Dr. Harmon's report was a two-page review of medical evidence, specifically Dr. Morgan's referral. ECF No. 6 at 287. Dr. Harmon described Dr. Morgan's assessment of Plaintiff and noted his severity ratings seemed realistic but never described Plaintiff's limitations or restrictions related to any impairments. *Id.* at 287-288. Nor did Dr. Harmon describe Plaintiff's work-related abilities with any specificity other than, "Sam would be likely to function more successfully and perhaps able to reconnect to the workforce if he remains abstinent from drugs and alcohol and engages in treatment." *Id.* at 288. Additionally, Dr. Harmon stated:

> It would be helpful to have more complete information, though, such as treatment, medical, or DOC records, objective mental health testing with the MMPI, PAI, or MCMI, or similar objective medical

evidence.  All the information in this referral is based just on Sam's self-report and Dr. Morgan had limited contact with him.

After reviewing the record, the Court agrees with Defendant that Dr. Harmon's report does not qualify as a medical opinion pursuant 20 C.F.R. § 416.913(a)(2), therefore, the ALJ did not err in failing to consider it.

iii.    <u>Dr. Suansilppongse and Dr. Gilbert</u>

Plaintiff next argues the ALJ committed several errors in finding Dr. Suansilppongse and Dr. Gilbert's opinions "generally persuasive".  ECF No. 9 at 17.  Plaintiff first contends the ALJ failed to consider Dr. Suansilppongse's finding that Plaintiff's "bipolar mood, anxiety reaction, infrequent distraction, and alleged pain would occasionally interfere with his ability for sustained concentration, persistence or for task completion" in the RFC.  *Id.* at 18.  Plaintiff argues the term "occasionally" is a vocational term denoting a condition exists up to one-third of the time, yet the ALJ did not account for this finding in the RFC.  *Id.*  However, the guide Plaintiff cites to, POMS DI 25001.001, defines the term "occasionally" as used in Selected Characteristics of Occupations ("SCO") or an RFC, not a medical opinion.  POMS DI 25001.001(54).

Plaintiff further argues that the ALJ failed to include Dr. Suansilppongse's recommendation of limiting Plaintiff to one- and two-step tasks in the hypothetical to the Vocational Expert ("VE") and the RFC, but instead concluded Plaintiff

could adjust to jobs with a reasoning level of two. ECF No. 9 at 18. Plaintiff cites to *Rounds v. Commissioner of Social Security Administration*, 807 F.3d 996 (9th Cir. 2015) in arguing a limitation to one- and two-step tasks conflict with jobs requiring level two reasoning, thereby, requiring remand. *Id.* This is an over generalization of the Ninth Circuit's reasoning in that case. The issue in *Rounds* was that the ALJ limited the plaintiff to performing one- and two-step tasks in the RFC but ultimately concluded the plaintiff could perform jobs requiring level two Reasoning based on the VE's testimony. *Rounds*, 807 F.3d at 1002. The court held the ALJ's failure to resolve this apparent conflict required remand. *Id.* at 1004. No such discrepancy exists here. Additionally, as Defendant notes, Dr. Suansilppongse concluded Plaintiff was limited to one- to two-step tasks but listed available occupations with level two or three reasoning. ECF No. 6 at 65, 67. Thus, the ALJ did not err in failing to account for Dr. Suansilppongse's one- to two-step task limitations.

As to Dr. Gilbert's report, Plaintiff argues the findings contradicted Dr. Suansilppongse's report because Dr. Gilbert concluded Plaintiff could perform complex tasks. ECF No. 9 at 19. As such, Plaintiff contends both reports cannot be considered persuasive. The Court disagrees, both reports concluded Plaintiff is capable of performing tasks that is transferable to a work setting. ECF No. 6 at 65, 76. Additionally, Plaintiff cites to no support prohibiting an ALJ from finding

reports with different conclusions on a claimant's limitations to be persuasive.

Finally, Plaintiff challenges the ALJ's supportability and consistency explanations in concluding Dr. Suansilppongse and Dr. Gilbert's opinions were persuasive. ECF No. 9 at 19-20. The ALJ stated:

> The state psychological consultants found the claimant could perform unskilled work, with infrequent contact with others, and occasional workplace changes and decisions made (Exhibit 1A, Exhibit 4A). Their opinions are generally persuasive, as they are supported by records reviewed that showed the claimant was doing ok on medication (Exhibit 6F/8). Their opinions are consistent with recent mental status examinations in the record that were unremarkable, even when the claimant could not afford medication (Exhibit 12F/1-19).

Plaintiff first contends the ALJ failed to properly address the supportability factor. The Court agrees. The ALJ must "'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted); 20 C.F.R § 404.1520c(b)(2). Here, the ALJ only cited to one page in the record in support of explaining the medical opinions were adequately supported. Defendant argues the ALJ adequately addressed the supportability factor because the medical opinions show Dr. Suansilppongse and Dr. Gilbert reviewed records showing Plaintiff was doing ok on medication. ECF No. 13 at 16. Even if the medical opinions are sufficiently supported by reference to the record, the ALJ's decision must be "supported by the

inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111. The

Court "cannot substitute [its own] conclusions for the ALJ's, or speculate as to the

grounds for the ALJ's conclusions." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495

(9th Cir. 2015). Therefore, the ALJ's decision must be remanded on this issue.

*See, e.g.*, *Scholes v. O'Malley*, at *8 (D. Haw. July 16, 2024) (explaining ALJ's

inadequate supportability analysis in rejecting medical opinions constituted legal

error); *Boeche v. Kijakazi*, 2024 WL 3430576, at *9 (S.D. Cal. July 15, 2024)

(finding reversible error where ALJ failed to analyze supportability of doctor's

opinion even though doctor provided evidence of supportability); *Katherine D. v.*

*Comm'r, Soc. Sec. Administration*, 2024 WL 244625, at *6 (D. Or., Jan. 23, 2024)

("[r]egarding 'supportability,' the ALJ erred by failing to discuss the strength of

the evidence underlying Dr. Hallenburg's conclusions.").

As to the consistency factor, Plaintiff argues the ALJ improperly found Dr.

Suansilppongse and Dr. Gilbert's medical opinions consistent with the record

showing "unremarkable" mental status even when the Plaintiff was not on

medication, because Plaintiff was on medication. ECF No. 9 at 20. The Court

interprets the ALJ's explanation to mean the record showed "unremarkable"

mental status while Plaintiff was being treated. The ALJ sufficiently cited to the

portion of the record supporting the consistency factor.

//

1  **C. Plaintiff's obesity**

2      Plaintiff's last argument that the ALJ reversibly erred is that the ALJ failed

3  to consider Plaintiff's obesity.  Defendant contends that because Plaintiff failed to

4  raise this issue as a basis for disability at the administrative hearing, it is forfeited.

5  ECF No. 13 at 20-21.  The Court agrees.

6      "[W]hen claimants are represented by counsel, they must raise all issues and

7  evidence at their administrative hearings in order to preserve them on appeal."

8  *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).  Plaintiff cites to the Ninth

9  Circuit case, *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003), as support that

10  the ALJ was required to consider the effect of Plaintiff's obesity on his other

11  impairments, despite him not raising the issue at the hearing.  ECF No. 9 at 21.

12  But that holding is distinguishable.  The court there concluded the ALJ was

13  required to consider claimant's obesity in making his decision for three reasons:

14  (1) it was implicitly raised by the symptoms she reported, (2) the obesity was close

15  to the listing criterion and could exacerbate her reported illnesses (diabetes and

16  hypertension), and (3) the claimant's pro se status.  *Celaya*, 332 F.3d at 1182.  But

17  more notably, the court concluded, "[t]he ALJ's exclusion of obesity from analysis

18  is error in that he was addressing an illiterate, unrepresented claimant who very

19  likely never knew that she *could* assert obesity as a partial basis for her disability."

20  *Id.* at 1183.

1    Here, Plaintiff testified his disability stemmed from depression, anxiety,

2    PTSD, ulnar neuropathy, asthma, and sleep apnea.  ECF No. 6 at 26.  But more

3    significantly, Plaintiff was represented by counsel during the administrative

4    hearing.  Therefore, Plaintiff failed to preserve the obesity issue for appeal by not

5    addressing it at the administrative hearing.

6    //

7    //

8                              **CONCLUSION**

9    For the foregoing reasons, the Commissioner's final decision is VACATED

10   and REMANDED for further administrative proceedings.  On remand, the ALJ

11   shall adequately evaluate the supportability factor in concluding Dr.

12   Suansilppongse and Dr. Gilbert's medical opinions to be persuasive.

13   Accordingly, **IT IS HEREBY ORDERED:**

14        1.  Plaintiffs Opening Brief (ECF No. 9) is **GRANTED** in part.

15        2.  The Commissioner's Brief (ECF Nos. 13) is **DENIED** in part.

16        3.  The Court enters **JUDGMENT** in favor of Plaintiff **VACATING** and

17            **REMANDING** the matter to the Commissioner of Social Security for

18            further proceedings consistent with this Order pursuant to sentence four

19            of 42 U.S.C. § 405(g).

20

ORDER OF REMAND ~ 26

1      The District Court Executive is hereby directed to file this Order, enter

2  **JUDGMENT** for Plaintiff, provide copies to counsel, and **CLOSE** the file.

3      **DATED** November 25, 2025.



THOMAS O. RICE
United States District Judge

ORDER OF REMAND ~ 27